07 CIV 9443

155-07/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
SEA CONSORTIUM PTE. LTD.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900 / Facsimile: (212) 425-1901
Michael E. Unger (MU 0045)
Lawrence Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SEA CONSORTIUM PTE. LTD.,                                           07 CIV      (    )

                Plaintiff,                                     **VERIFIED COMPLAINT**

  -against-


HRC SHIPPING LTD.,

                Defendant.
-----------------------------------------------------------x

      Plaintiff SEA CONSORTIUM PTE. LTD. (hereinafter "SEA CON"), by its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant HRC SHIPPING LTD. (hereinafter "HRC-Bangladesh"), alleges upon information and belief as follows:

      1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim of maritime tort for the wrongful arrest by HRC-Bangladesh of vessels chartered by SEA CON. The case also falls within this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, *et seq.* and / or the Arbitration Act, 9 U.S.C. §1 *et seq.* and /or §201 *et seq.* and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. This action is in some ways related to another matter between the same two parties, currently pending before The Hon. Judge Crotty in a case entitled *Sea Consortium Pte. Ltd. v. HRC Shipping Ltd.*, bearing docket no. 07 CIV 2492.

2.      At all times relevant hereto, SEA CON was and still is a foreign business entity organized and existing under the laws of a foreign country, with an office and place of business at 11 Duxton Hill, Singapore 089595.

3.      At all times relevant hereto, HRC-Bangladesh was and still is a business entity organized and existing under the laws of a foreign country, with an office and place of business at 4/F TCB Bhaban, 1 Kawran Bazar Com. Area. Dhaka-1215, Bangladesh.

**Background to the Root Dispute Between the Parties**

4.      On or about February 22, 2004, SEA CON and HRC-Bangladesh entered into a slot charter agreement whereby both parties would provide vessels to a joint feeder service between Colombo, Sri Lanka and Chittagong, India. The slot charter agreement contemplated that the two parties would carry cargoes for each other.

5.      SEA CON chartered the M/V JAAMI to perform some of its duties under the slot charter agreement and in December 2004, HRC-Bangladesh had some fifty-three containers on board the M/V JAAMI, shipped on behalf of HRC-Bangladesh's customers, on board the vessel as it sailed from Chittagong to Colombo. The vessel arrived at Colombo on February 26, 2005, and during the approach to the berth while under pilotage near the entrance of the breakwater at about 0955 hours, the vessel was hit by the first effects of a tsunami causing the vessel to strike the port control tower and subsequently a jetty. Despite the best efforts of SEA CON, the vessel became a total loss as did all the cargo under deck and part of the cargo carried on deck.

6.      The slot charter agreement provided for arbitration of all claims between the parties in London, England pursuant to English law, but in breach of the arbitration agreement, HRC-Bangladesh commenced proceedings in the High Court in Bangladesh. These proceedings brought by HRC-Bangladesh included the arrest by HRC-Bangladesh of two vessels, the M/V X-

PRESS RESOLVE and the M/V X-PRESS MANASLU, which were then under charter to SEA CON.

7.  The arrest of these two vessels was blatantly wrongful, as no valid claim could be made against these vessels under applicable law.

8.  Despite diligent efforts by SEA CON and the owners of the vessels to have the arrests lifted, this was not accomplished until April 20, 2006 by reason of various appeals and stay orders obtained by HRC-Bangladesh, all of which were defeated by SEA CON.

9.  SEA CON meanwhile pursued arbitration pursuant to the agreement in London. HRC-Bangladesh wrongfully contended that it was not bound by the arbitration clause and SEA CON, being aggrieved by HRC-Bangladesh's refusal to arbitrate, applied for the English High Court to appoint an arbitrator in view of HRC-Bangladesh's refusal to co-operate in the constitution of the arbitration tribunal. Only on May 2, 2006 did HRC-Bangladesh accept that it was bound by the arbitration agreement and obliged to concur in the appointment of an arbitrator.

10. SEA CON won a series of court orders and arbitral awards against HRC-Bangladesh, all in accordance with the arbitration agreement between the parties, including the main arbitration concerning HRC-Bangladesh's wrongful arrest of the M/V X-PRESS RESOLVE and the M/V X-PRESS MANASLU. In all, SEA CON was awarded approximately three million three hundred thousand dollars ($3,300,000) against HRC-Bangladesh. HRC-Bangladesh appealed the main award (in the amount of approximately $2.9 million) and lost. The awards and judgments against HRC-Bangladesh are final and conclusive and are capable of enforcement.

11. Despite due demand made of HRC-Bangladesh, however, HRC-Bangladesh refused or otherwise failed to pay. Such refusal was willful, contumacious, vexatious, and in complete and utter bad faith.

12. In order to collect on the amounts awarded against HRC-Bangladesh, SEA CON commenced enforcement proceedings in places where SEA CON was aware HRC-Bangladesh had, or might have, assets. Separate proceedings were brought in France, New York, and Singapore. SEA CON successfully restrained property of HRC-Bangladesh in all three of these jurisdictions, first in France, next in New York, and then finally in Singapore. The restraints in France and New York consist of funds. The restraints in Singapore involve garnishing of debts due to HRC-Bangladesh and seizure of a vessel owned by HRC-Bangladesh called the M/V BANGA BORAT.

13. In Singapore, the restraint of the vessel was not an admiralty arrest proceeding but was rather a restraint of an asset of a debtor. As such, when it was first seized by the Singapore Court, it could only be sold subject to all liens and encumbrances, including a vessel mortgage of approximately $1.8 million. The vessel was offered for sale by the Court, but there were no bidders.

14. The M/V BANGA BORAT was subsequently subjected to an admiralty arrest by the bank that held the mortgage on the vessel. Because HRC-Bangladesh has refused or otherwise failed to post substitute security for the ship, it is scheduled to be sold at auction within the next few months. After the sale, creditors, including but not limited to SEA CON and the bank, will have an opportunity to submit their claims before the Singapore Court in order to attempt to collect whatever funds are generated. Any excess (if any) after all claims are paid out will be returned to HRC-Bangladesh.

15. HRC-Bangladesh has contested the restraint of its funds in France, but has since failed to give further instructions to its lawyers in France who on that ground have obtained lengthy adjournments of the French proceedings and the funds in France remain under restraint.

16. HRC-Bangladesh also contested the restraint of its funds in New York. After the matter had been fully briefed by both sides, which made it entirely clear that there was no legitimate basis upon which HRC-Bangladesh could defeat the restraint of its funds in New York, HRC-Bangladesh withdrew its application shortly before the scheduled oral argument on its motion.

17. HRC-Bangladesh's agent in Singapore, which is a related entity, HRC Shipping (S) Pte. Ltd. ("HRC-Singapore") has now appeared in the New York proceedings and has asserted that funds it was sending for and on behalf of HRC-Bangladesh are its own property and has contested the restraint of the same funds which HRC-Bangladesh previously contended in its withdrawn motion were its property. HRC-Singapore has offered no viable factual or legal support for its application, which appears instead to have been made for the sole purpose of delaying and frustrating judgment creditor SEA CON.

18. The foregoing allegations of this Complaint, contained in paragraphs 4 through 17, inclusive, are provided as background to the instant dispute between the parties, to which we now turn. The merits of those allegations are being heard in other fora, including but not limited to the previously filed action between these parties bearing this Court's docket no. 07 CIV 2492 (PAC).

### The New Dispute Between the Parties

19. In what can only be described as baseless, vexatious and harassing litigation, in July 2007, HRC-Bangladesh filed a second action in Bangladesh against SEA CON in which it

sought the arrest of two other vessels under charter by SEA CON, the M/V DA LI and the M/V LADY FATIMA.

20.     As before, such action by HRC-Bangladesh was entirely wrongful as there was no basis whatever for any claim against either vessel.

21.     HRC-Bangladesh was well aware that its second action in Bangladesh was entirely baseless because of its previous experience – the action in Bangladesh was not only contrary to the parties' agreement to arbitrate all claims in England, but it also repeated the practice of wrongfully arresting vessels that were under charter to SEA CON and against which HRC-Bangladesh had no cognizable claim.

22.     The M/V DA LI was in Bangladesh at the time the arrest order was issued and was actually arrested on July 16, 2007. The vessel spent some 35 days under arrest before its release was won. During this time, SEA CON suffered substantial losses. SEA CON was obliged to pay the time charter hire to the vessel's owners, bunkers (fuel and lubricating oils), and port expenses while the vessel was under arrest. Extra hire was also paid for a replacement vessel, the M/V SUMIDA, which SEA CON had to charter at a higher rate than the M/V DA LI in order to mitigate damages and meet contractual obligations that the M/V DA LI could not meet while under arrest.

23.     In order to avoid the arrest of the M/V LADY FATIMA, which was not in Bangladesh at the time of the issuance of the arrest order, SEA CON diverted the vessel. This required discharge of Chittagong-bound containers at Visakha, India. Extra costs were incurred in discharging cargo at Visakha and reloading it on the M/V X-PRESS MAKALU. Diversion costs were also incurred for the M/V X-PRESS MAKALU from Chennai to Visakha so that it could load the M/V LADY FATIMA's cargo.

24. The total expenses resulting from HRC-Bangladesh's second arrest action in Bangladesh (not including interest or legal fees) were $684,126.06.

25. SEA CON was successful in ultimately obtaining the discharge of the arrest order in Bangladesh, which freed the M/V DA LI from actual arrest and lifted the arrest order against the M/V LADY FATIMA (which was not actually arrested). Awardable and recoverable fees in securing the lifting of the arrest total $71,278.50.

26. SEA CON has referred its further claims for damages with respect to this second arrest action to arbitration in London in the continuing arbitral proceedings against HRC-Bangladesh.

27. In connection with the filing of this application, SEA CON conducted an investigation and determined that Defendant HRC-Bangladesh could not be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims. HRC-Bangladesh's only activity within this District is its participation as Defendant in the other matter between these two parties.

28. Defendant currently has (and may shortly have additional) assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due to, from, or for the benefit of Defendant HRC-Bangladesh (hereinafter, "ASSETS"), including but not limited to ASSETS at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

29. This action is brought in order to obtain security to satisfy an arbitral award to be rendered in SEA CON's favor against HRC-Bangladesh in connection with the wrongful and abusive second arrest action brought by HRC-Bangladesh in Bangladesh, and to otherwise aid in

the collection of the award should the same be entered as a judgment here. The security sought includes the amount of the main claim ($684,126.06 in expenses incurred) plus attorneys fees incurred in lifting the arrest order in Bangladesh ($71,278.50) plus interest, attorneys fees and costs in the pending arbitration, all of which are recoverable as part of the Plaintiff's main claim under English law, and also for attorneys fees and costs in connection with recognition, enforcement and collection of the award, which are awardable under American law for the bad faith refusal or failure to satisfy an arbitral award.

30. As nearly as presently can be estimated, the total amount sued for, for which SEA CON prays for an attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims against HRC-Bangladesh includes:

(a) The principal sum of $684,126.06;

(b) The sum of $71,278.50 in attorneys fees, costs and disbursements incurred in lifting the wrongful second arrest in Bangladesh;

(c) Interest on the foregoing at a commercial rate of 8%, allowable under the rules of English arbitration as agreed by the parties hereto over the period of 2 years, the amount of time anticipated to obtain an arbitral award on this claim and have the same entered as a judgment in the amount of $120,864.73;

(d) Anticipated awardable attorneys fees and the cost of the arbitration in London and anticipated awardable attorneys fees incurred in collecting on the arbitral award in the amount of $350,000;

For a total sought to be attached in the sum of **$1,226,269.29**. SEA CON hereby reserves its right to further amend the Complaint to assert additional damages should same be incurred and to seek additional security should the amount set forth herein appear to be inadequate.

**W H E R E F O R E**, Plaintiff SEA CON prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant HRC SHIPPING LTD., citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim of $755,404.56, plus interest, costs and attorneys' fees;

b. That if the Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant or in which the Defendant has an interest, as described herein, up to and including the amount of the claims of **$1,226,269.29** be restrained and attached, including, but not limited to any cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, held or being transferred to, from or for the benefit of the Defendant (collectively hereinafter "ASSETS") including, but not limited to such ASSETS as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit by others, at, moving through, or within the possession, custody or control of banking institutions and any other garnishees upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein may be served;

c. That the Court retain jurisdiction to enter an order recognizing and enforcing any arbitral awards issued in favor of SEA CON and against HRC-Bangladesh and entering judgment thereon in the principal amount of the award together with pre-award interest and post-award interest, as well as the attorneys fees and costs incurred in this proceeding;

d. That Plaintiff have such other, further and different relief as this Court may deem just and proper in the premises, including but not limited to an award of all

attorneys fees and costs incurred in connection with this proceeding and in connection with any further efforts to recognize, enforce and collect upon the amounts owed by HRC-Bangladesh to SEA CON as set forth in arbitral awards or court judgments.

Dated: New York, New York
       October 23, 2007

                FREEHILL HOGAN & MAHAR, LLP
                Attorneys for Plaintiff
                SEA CONSORTIUM PTE LTD.

By: _____
                Michael E. Unger (MU 0045)
                Lawrence J. Kahn (LK 5215)
                80 Pine Street
                New York, NY 10005

## ATTORNEY VERIFICATION

State of New York   )
                    ) ss.:
County of New York  )

Michael E. Unger, being duly sworn, deposes and says:

1. I am a member of the law firm of Freehill Hogan & Mahar, LLP, attorneys for the Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications from our client and documents provided by our client regarding this claim.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within the State of New York.

_____
Michael E. Unger

Sworn to before me this
23rd day of October, 2007

_____
NOTARY PUBLIC

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/