155-07/MEU/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x            **07 CIV 2492 ( PAC )**
SEA CONSORTIUM PTE. LTD.,

                                        Plaintiff,

     -against-

HRC SHIPPING LTD.,

                                        Defendants.
-----------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR ATTORNEYS FEES


                         FREEHILL HOGAN & MAHAR, LLP
                         Attorneys for Plaintiff
                         Sea Consortium Pte. Ltd.
                         80 Pine Street
                         New York, NY  10005
                         (212) 425-1900 / (212) 425-1901 (fax)


<u>Of Counsel</u>
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/301945.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

RELEVANT BACKGROUND FACTS ........................................................................... 1

ARGUMENT

      SEA CON SHOULD BE AWARDED ITS ATTORNEYS FEES
      AND DISBURSEMENTS IN CONNECTION WITH COLLECTION ........................... 11

CONCLUSION ............................................................................................................. 17

## TABLE OF AUTHORITIES

Alyeska Pipeline Service Co. v. Wilderness Society,
 421 U.S. 240 (1975) ...................................................................................................12

Celsus Shipholding Corp. v. Pelayaran Kanaka Dwimitra
 Manunggal, 2008 U.S. Dist. LEXIS 12842,   (S.D.N.Y.
 Feb. 21, 2008)...........................................................................................................13

Chambers v. Nasco, Inc., 501 U.S. 32 (1991) ............................................................11, 12

F.D. Rich Co. v. United States ex rel. Industrial Lumber
 Co., 417 U.S. 116 (1974)............................................................................................12

First Nat'l Supermarkets, Inc. v. Retail, Wholesale and
 Chain Store Food Employees Union, Local 228, 118
 F.3d 892 (2d Cir. 1997) .............................................................................................14

Hutto v. Finney, 437 U.S. 678  (1978) ...........................................................................12

In the Matter of the Arbitration Between Bulkcarriers,
 Ltd. and Societe Al Alam Int'l, 1983 A.M.C. 1501
 (S.D.N.Y. 1983)..........................................................................................................14

Int'l Ass'n of Teamsters v. Ass'n of Flight Attendants,
 1988 U.S. Dist. LEXIS 17602 (D.D.C.), aff'd 864
 F.2d 173 (D.C. Cir. 1988)..........................................................................................12

Int'l Chem. Workers Union (AFL-CIO), Local 227 v.
 BASF Wyandotte Corp., 774 F.2d 43 (2d Cir. 1985)....................................................13

International Union of Petroleum and Industrial Workers
 v. Western Industrial Maintenance, 707 F.2d 425 (9th
 Cir. 1983)...............................................................................................................14,15

International Union of District 50, United Mine Workers
 of Am. v. Bowman Transp. Inc., 421 F.2d 934 (5th Cir.
 1970)...........................................................................................................................14

Nat'l Ass'n of Letter Carriers v. U.S. Postal Serv., 590
 F.2d 1171 (D.C. Cir. 1978).........................................................................................14

North American Foreign Trading Corp. v. Zale Corp.,
 83 F.R.D. 297 (S.D.N.Y. 1979)...................................................................................12

Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980); .......................................................12

RLS Associates, LLC v. United Bank of Kuwait PLC,
    2006 U.S. Dist. LEXIS 91443 (S.D.N.Y. Dec. 19,
    2006)................................................................………………...………………12

SSA Terminals v. Machinists Automotive Trades
    District Lodge No. 190, 244 F.Supp.2d 1031
    (N.D.CA. 2003) ................................................................................................15

United States v. Int'l Ass'n of Teamsters, 948
    F.2d 1338 (2d Cir. 1991) ................................................................................12

United Steelworkers of Am. v. Interpace Corp.,
    447 F. Supp. 387 (W.D. PA. 1978) ...............................................................14

Universal Computer Services, Inc. v. Dealer Services,
    Inc., 2003 U.S. Dist. LEXIS 12237 (E.D.N.Y. 2003) ...................................12

## PRELIMINARY STATEMENT

Plaintiff Sea Consortium Pte. Ltd. ("SEA CON"), through undersigned counsel, respectfully submits this memorandum of law, together with the accompanying Davidson Declaration and Unger Affirmation, in support of its application for a judgment against Defendant HRC Shipping Ltd. ("HRC-Bangladesh") for the reasonable attorneys fees and disbursements SEA CON incurred in connection with attempting to enforce its arbitral award against HRC-Bangladesh.

SEA CON is well aware that an award of attorneys fees, in the absence of a statutory or contractual requirement to make such an award, is rare and not favored under the so-called "American Rule". Generally, such awards are made only when a party's conduct is so vexatious, wanton, and lacking in good faith that the award is necessary as an equitable penalty.[1] This, however, is just such a case where an award of attorneys fees is more than just appropriate – for the reasons set forth below, it is well nigh necessary.

## RELEVANT BACKGROUND FACTS

The dispute between the parties in this matter is well-known to the Court through prior motion practice, and an in-depth review of the background to the dispute is not necessary for the Court's consideration of this application. What is critical in connection with this application, though, is the improper behavior by HRC-Bangladesh which justifies the award of reasonable attorneys fees made herein.

In February 2004, the parties entered into a slot-charter agreement whereby both would provide vessels on a joint feeder service between Colombo, Sri Lanka and Chittagong, Bangladesh, carrying cargoes for each other. One of the carrying vessels

---

[1] Such awards may also be made if the party's attorney acts in such a manner. To be clear, SEA CON does not contend in any way that HRC-Bangladesh's counsel in this case acted inappropriately.

used was the M/V JAAMI, which due to a tsunami, became a total loss along with her cargo, which included some 53 containers carried for HRC-Bangladesh. The tsunami was unpredicted and HRC-Bangladesh's loss, while tragic, plainly was not the responsibility of SEA CON. HRC-Bangladesh should have recovered from its own insurer and the matter should have been laid to rest at that juncture. Davidson Decl. ¶5-7.

The charter contained a law and jurisdiction clause that required the parties to arbitrate all disputes in London, England pursuant to English law. Pursuant to the agreement that the parties entered into of their own free will long before a problem between them arose, English arbitration was to be the one and only available venue for resolution of their disputes. In breach of the arbitration agreement, though, on December 18, 2005 HRC-Bangladesh wrongfully commenced proceedings in the High Court of Bangladesh against the M/V X-PRESS RESOLVE, the M/V X-PRESS MANASLU, SEA CON, and various others. Davidson Decl. ¶8-10.

Particularly harassing was the fact that the proceedings in Bangladesh involved the arrest of the two X-PRESS vessels. SEA CON was not the owner of either of the arrested vessels, and HRC-Bangladesh was aware of this fact at the time it sought the arrest. The vessels had been time chartered by SEA CON, but there is no basis under English or Bangladeshi law to arrest vessels time chartered by a defendant to an action. The vessel arrests were wrongful on their face and it is clear that HRC-Bangladesh knew as much at the time. Even to the extent it did not actually know, though, it should have known because the information is readily available in maritime publications, and – certainly – HRC-Bangladesh was made aware of the fact that the vessels were under time charter immediately upon the arrest of the vessels. Davidson Decl. ¶10-12.

As no claim could properly be made against either vessel under any applicable law (including but not limited to the law of England and the law of Bangladesh), the arrests were knowingly made in bad faith and without any regard as to whether there were adequate grounds for the arrest of the vessels. Davidson Decl. ¶13.

Despite diligent efforts by SEA CON[2] and the owners of the vessels to have the arrests lifted, this was not accomplished until April 20, 2006 (*i.e.*, approximately 4 months later) by reason of various appeals and stay orders obtained by HRC-Bangladesh. HRC-Bangladesh's appeals and stay orders were obtained for the purpose of keeping commercial pressure on SEA CON and HRC-Bangladesh knowingly submitted its applications for such appeals and stay orders improperly and in bad faith for the purpose of delay and harassment and without any basis in law or in fact. Davidson Decl. ¶14.

Indeed, even after the admiralty judge in Bangladesh had dismissed all of HRC-Bangladesh's claims on the obvious grounds that no one could be held liable for an Act of God which the tsunami surely was, and also dismissed all of HRC-Bangladesh's other spurious arguments as to why it should be allowed to arrest time-chartered vessels, holding that it was clear beyond doubt there could be no admiralty jurisdiction for such arrests, HRC-Bangladesh persisted in staying the release order by appealing the decision. HRC-Bangladesh knowingly filed the appeal frivolously and vexatiously in order to keep SEA CON from operating its container feeder service in Bangladesh for several more months and inflict further loss and damage upon SEA CON by keeping the time chartered vessels under arrest. HRC-Bangladesh had no valid legal ground to appeal as eventually

---

[2] Although SEA CON was not the owner of either of the vessels, it was a time charterer of both, and the arrest of the two ships resulted in delays to cargo for which SEA CON was responsible, and caused commercial friction between SEA CON and the vessel owners and also between SEA CON and the cargo interests. HRC-Bangladesh was well aware of the commercial pressure it was placing on SEA CON through its wrongful arrest and pursued this illegitimate course of action purely for oppressive reasons.

decided by the Court of Appeal in Bangladesh which, after HRC-Bangladesh could no longer delay the inevitable, summarily dismissed the application for leave to appeal as unfounded and unwarranted. Davidson Decl. ¶14.

On the day of the arrest of the vessels (December 22, 2005), SEA CON called upon HRC-Bangladesh to concur in the appointment of an arbitrator in accordance with the arbitration clause in the charter. HRC-Bangladesh wrongfully contended that it was not bound by the arbitration clause and willfully pursued the Bangladeshi proceedings in knowing and purposeful breach of the arbitration agreement. HRC-Bangladesh did not accept that it was bound by the arbitration agreement and obliged to concur in the appointment of an arbitrator until May 2, 2006 (*i.e.*, after its improper arrest action in Bangladesh was concluded against it). In the intervening four-plus month period, SEA CON commenced proceedings in the English High Court in London, seeking an order compelling HRC-Bangladesh to arbitrate and seeking a Court Order for the appointment of an arbitrator in view of HRC-Bangladesh's refusal to concur in the appointment of a sole arbitrator or to name its own when lawfully called upon and obliged to do so. SEA CON's application was granted and an order awarding SEA CON costs of £3,500 in respect of those proceedings was made on July 7, 2006, which HRC-Bangladesh – flaunting the English Court Order – has refused or otherwise failed to pay. Davidson Decl. ¶15-19.

Pursuant to an arbitration award dated March 26, 2007, SEA CON was awarded damages against HRC-Bangladesh in the principal sum of $2,886,076.87 as a result of HRC-Bangladesh's breach of the London arbitration agreement, wrongful arrests of the vessels in Bangladesh, breach of the claim handling provisions contained in the charter,

breach of implied terms in the charter, and wrongful interference with SEA CON's contractual rights. The award directed HRC-Bangladesh to pay the award "forthwith". Despite due demand, and in bad faith, HRC-Bangladesh has refused or otherwise failed to make any payment whatever against the award. Davidson Decl. ¶20-21.

Instead, HRC-Bangladesh filed a baseless and futile action in the English High Court seeking (a) to challenge the award on the basis that the arbitrator lacked jurisdiction to award damages for certain claims and (b) permission to appeal on a point of law in order to seek to set aside certain damages awarded. The action was futile to the point of frivolity because even if the jurisdictional issue was decided in favor of HRC-Bangladesh, the same damages would have been awarded on other grounds found by the arbitral tribunal. Hence, even if HRC-Bangladesh would have succeeded on all points, it would still have been liable to SEA CON for unchallenged and indisputable sums. Accordingly, the failure to make any payment at all against the award – even for the portion of the award unaffected by HRC-Bangladesh's action in the English High Court (which, at approximately $443,000 was not insignificant) – was in clear bad faith. In any event, though, the English High Court thereafter ruled against HRC-Bangladesh on all counts. Even after such ruling, HRC-Bangladesh in continued bad faith and flaunting now a second Court Order, still refused to pay the award, despite due demand. Davidson Decl., ¶22-27.

Under English law, a prevailing party is entitled to certain costs and interest against the unsuccessful side. Ordinarily in arbitration, the parties attempt to negotiate such an award before it is issued. Here, SEA CON invited HRC-Bangladesh to negotiate and settle the costs and interest to avoid the further costs in obtaining a second award

from the arbitrators on this point. HRC-Bangladesh, though, refused to negotiate in good faith, and ultimately the matter was put to the arbitrators, who issued a costs and interest award. HRC-Bangladesh, in bad faith has refused to pay on this award as well. Davidson Decl., ¶28-29.

Due to HRC-Bangladesh's bad faith refusal to pay on the awards, SEA CON commenced actions in various jurisdictions for the purpose of securing funds to collect on the awards. SEA CON commenced an attachment action in this Court, and commenced similar actions in France and Singapore. SEA CON has restrained HRC-Bangladesh assets in all three of those jurisdictions, and in each jurisdiction, HRC-Bangladesh raised spurious objections to the restraint of its funds. Here, for example, HRC-Bangladesh filed a motion to vacate the attachment even though there were no grounds for vacature (HRC-Bangladesh withdrew the motion at the eleventh hour – after full briefing but before the Court had an opportunity to deny the motion). HRC-Bangladesh's application made in France to vacate the French conservatory attachment was similarly meritless and HRC-Bangladesh withdrew its application shortly before it was to be rejected by the French court. Importantly, HRC-Bangladesh intentionally filed its application in an improper court in France for challenging a conservatory attachment order, plainly for the purpose of avoiding its instant dismissal as the grounds on which the motion had been advanced was devoid of any merit, which the proper court would not have allowed to proceed. As in all proceedings before the French, Singaporean, Bangladeshi, and English Court and arbitral tribunal, HRC deliberately failed to give its lawyers instructions leading to repeated adjournments and delays, all with the obvious

intent to maintain its spurious challenge to prevent collection on the awards and to force SEA CON to incur additional unnecessary costs of collection. Davidson Decl., ¶30-33.

In Singapore, HRC-Bangladesh attempted in bad faith to raise the same challenge to the award as had been raised and rejected by the English High Court, and this attempt was rejected by the Singaporean Court. Not only was this obviously *res judicata* because the same -- improper -- point had already been heard and determined by the tribunal competent to hear the argument (and on appeal) but this was clearly also not one of the grounds on which enforcement of a foreign arbitral award may be challenged under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (which applies in Singapore). This was yet another blatant bad faith attempt to delay the inevitable and force SEA CON to incur additional costs to recover the sums awarded in the arbitration. Davidson Decl., ¶34.

HRC-Bangladesh also groundlessly sought to reserve the right to challenge the personal service of the Singaporean court order effected upon HRC-Bangladesh and has gone so far as to obstruct service of the Singaporean court papers by returning letters delivered by courier to the courier company. HRC-Bangladesh is also seeking to dodge service in the Singapore action by refusing to accept registered mail and by seeking to prevent clerks in Bangladesh from leaving copies of the Singaporean court papers at HRC-Bangladesh's business premises. HRC-Bangladesh even went so far as to deny instructions to the Singapore lawyers it had appointed to act for it to accept service of court papers, causing further delay and costs to be incurred by insisting upon personal service upon it in Bangladesh, which it then went on to refuse to accept. Davidson Decl., ¶35.

The Singapore High Court has now ruled against HRC-Bangladesh on all of its applications in SEA CON's enforcement proceedings.[3]  HRC-Bangladesh's applications in New York, France and Singapore were not borne out of any good faith basis for challenging the arbitral award or the proceedings in those fora, but were instead nothing more than a vexatious and harassing attempt to drive up the cost of compelling it to pay on a legitimate and unchallengeable arbitral award, a large part of such award being compensation for HRC-Bangladesh's own prior bad acts. Davidson Decl., ¶36-37.

In any event, in Singapore and in this Court, the award has been entered as a judgment. Judgment remains pending in France and is anticipated shortly. Despite entry of judgment against it in these two jurisdictions, though, and in continued bad faith, HRC-Bangladesh has still refused to make any payment whatever to SEA CON, essentially requiring SEA CON to expend funds to collect. Davidson Decl., ¶38.

HRC-Bangladesh's vessel, the M/V BANGA BORAT was later seized when it entered Singapore under a writ of seizure and sale.[4]  Although HRC-Bangladesh could have offered cash security in lieu of its vessel remaining seized by the Singapore Court to enforce the judgments, HRC-Bangladesh refused to provide alternative security or to pay the sums adjudged against it. The predictable result of such inaction was still more delay occasioned not only by the need to sell the vessel, but also by the appearance of other creditors staking claims to the proceeds of the sale of the M/V BANGA BORAT. Davidson Decl., ¶39-41.  HRC-Bangladesh also moved this Court to delay resolution of the instant matter arguing that this Court should await the decision of the Singaporean Court.  In so urging this Court, HRC-Bangladesh repeatedly advised this Court that the

---

[3] To be clear, HRC-Bangladesh is presently resisting summary judgment in its own bank's foreclosure proceedings against it in Singapore with respect to the M/V BANGA BORAT.
[4] Which is akin to an enforcement action and is not an admiralty arrest.

Singapore matter was on a quick timetable. SEA CON countered that HRC-Bangladesh's time estimates were incorrect and SEA CON was proven correct.

Despite that every ruling has been against it, HRC-Bangladesh nonetheless commenced another proceeding in Bangladesh in July 2007 against two vessels, the M/V DA LI and the M/V LADY FATIMA. HRC-Bangladesh asserted the same claims previously made against SEA CON (which had already been dismissed) as when it had arrested the M/V X-PRESS RESOLVE and M/V X-PRESS MANASLU. Inasmuch as the merits had already been determined against HRC-Bangladesh not only in arbitration but also on appeal in England, and insofar as the merits had also been determined against HRC-Bangladesh on these very same points in the Bangladeshi court proceedings, there plainly was no basis whatever in proceeding with such a new arrest action in Bangladesh. Davidson Decl., ¶42

As was the case previously, the M/V DA LI and the M/V LADY FATIMA were time chartered by SEA CON and owned by other companies. Notwithstanding the fact that the earlier arrests had been struck out for lack of a cause of action, HRC-Bangladesh abusively, vexatiously, wantonly, and in complete and utter bad faith proceeded nonetheless with the new arrest action in order to harass SEA CON and apply improper commercial pressure and for no legitimate purpose. The vessels' owners, along with SEA CON, applied to the High Court of Bangladesh to set aside the new arrests. Since the earlier decisions of the Bangladesh High Court are binding on HRC-Bangladesh, and since the decision to set aside the original arrest had been upheld on appeal,[5] it was

---

[5] The Bangladesh High Court set aside the original arrest because admiralty jurisdiction does not exist to arrest vessels that are not owned by, but are only time-chartered by, the defendant. This decision was upheld on appeal. The Bangladesh High Court, in a further binding decision, also struck out HRC-Bangladesh's claim because neither HRC Bangladesh nor any cargo interest could have a claim for loss or

inevitable that the new arrest would also be set aside. It was, on August 14, 2007. SEA CON has now obtained a further (third) arbitral award against HRC-Bangladesh, which HRC-Bangladesh also refuses to pay, for the loss and damage inflicted by the second wrongful arrest action in Bangladesh (which, again, was an improper proceeding given the exclusive forum selection clause in the contract between SEA CON and HRC-Bangladesh) against the M/V DA LI and M/V LADY FATIMA. Davidson Decl., ¶¶43-47.

HRC-Bangladesh refused to participate in the further arbitration proceedings but in view of the first arbitral award the tribunal had no hesitation in finding that HRC-Bangladesh could not have raised a credible defense and held them in breach of the arbitration agreement. Given the prior experience, the tribunal further found that HRC-Bangladesh could have been under no illusion that, as a matter of Bangladeshi law, such arrests were improper and manifestly illegitimate. Davidson Decl., ¶48.

HRC-Bangladesh has gone to extreme lengths to harass and delay and to attempt to avoid its obligation to pay legitimate arbitral awards and judgments entered against it. It should be noted that a large part of the first award is for damages suffered by SEA CON due to HRC-Bangladesh's prior wrongful actions. SEA CON's English solicitor, Mr. Davidson, has testified that in over twenty years of practice he has never experienced such inappropriate and vexatious conduct by a party. Davidson Decl., ¶49.

Under such circumstances, the efforts made by SEA CON to collect on the award (particularly where, as here, HRC-Bangladesh participated in the arbitration) should be reimbursed and a judgment should be entered in favor of SEA CON and against HRC-

---

damage to cargo suffered in the grounding of the M/V JAAMI at Colombo because the event was due to a tsunami which was plainly and indisputably an Act of God for which no one could be held liable.

Bangladesh for its reasonable attorneys fees and disbursements in collecting the award/judgment.

## ARGUMENT

### SEA CON SHOULD BE AWARDED ITS ATTORNEYS FEES AND DISBURSEMENTS IN CONNECTION WITH COLLECTION

Attorneys fees are generally not recovered by the successful party in a federal action absent statutory authority. Courts in this Circuit and elsewhere, however, have granted attorneys fees awards based on the court's inherent equitable powers, both generally and in the form of sanctions. Independent of the ability of this Court to impose sanctions pursuant to 28 U.S.C. §1927 and Rule 11, the Supreme Court has held that a Court has the inherent power to impose sanctions whenever it determines that bad faith conduct has occurred. In Chambers v. Nasco, Inc., 501 U.S. 32, 45-46 (1991), the Supreme Court held:

> an assessment of attorney's fees is undoubtedly within a court's inherent power as well. Indeed, there are ample grounds for recognizing that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees...even though the so-called "American Rule" prohibits fee shifting in most cases....a court may assess attorney's fees as a sanction for the willful disobedience of a court order...[and] a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons....The imposition of [such] sanctions...transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

(internal quotations and some punctuation omitted), *citing, inter alia*, Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978); Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980); and Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259 (1975). *See also* North American Foreign Trading Corp. v. Zale Corp., 83 F.R.D. 297 (S.D.N.Y. 1979).[6]

Under the Court's inherent discretionary power to impose sanctions for improper conduct, the Court may award attorneys fees whenever a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska, 421 U.S. at 258-59, *quoting* F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116 (1974); Int'l Ass'n of Teamsters v. Ass'n of Flight Attendants, 1988 U.S. Dist. LEXIS 17602 (D.D.C.), *aff'd* 864 F.2d 173 (D.C. Cir. 1988). Determining whether to impose sanctions under its general equitable power, the Court is to look not to the outcome, but "on how the parties conduct[ed] themselves during the litigation." Chambers, 501 U.S. at 53. *See also* United States v. Int'l Ass'n of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991). In appropriate circumstances, the Court's equitable power to award attorneys fees and expenses should be exercised. Universal Computer Services, Inc. v. Dealer Services, Inc., 2003 U.S. Dist. LEXIS 12237 (E.D.N.Y. 2003).

This Court has sufficient independent authority to award reasonable attorneys' fees and costs incurred by SEA CON as a result of HRC-Bangladesh's failure to satisfy the arbitral award rendered in the London arbitration coupled with its vexatious conduct.

---

[6] This memorandum of law assumes the application of the American rule. It is respectfully submitted, however, that this Court should also consider the alternative of applying English law – which is the law that the parties agreed in their contract would apply to their disputes – which awards attorneys fees incurred in collection as a matter of course. Davidson Decl., ¶51. Courts of this Circuit have a long history of applying this rule of English law in appropriate circumstances. *See, e.g.*, RLS Associates, LLC v. United Bank of Kuwait PLC, 2006 U.S. Dist. LEXIS 91443 (S.D.N.Y. Dec. 19, 2006) (Haight, J.).

Such was the holding in a recent similar case involving the Court's maritime jurisdiction in an effort to enforce a foreign arbitral award. In <u>Celsus Shipholding Corp. v. Pelayaran Kanaka Dwimitra Manunggal</u>, 2008 U.S. Dist. LEXIS 12842, *5 (S.D.N.Y. Feb. 21, 2008), the plaintiff obtained a Rule B attachment to secure a maritime charter party claim being made in London arbitration. After the award was issued in plaintiff's favor, the defendant failed to appeal and refused – without reason – to pay. The Court (Cote, J.) held that

> [p]ursuant to its inherent equitable powers…a court may award attorney's fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons. As applied to suits for the confirmation and enforcement of arbitration awards…when a challenger refuses to abide by an arbitrator's decision without justification, attorneys fees and costs may properly be awarded.

(*Citing* <u>Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.</u>, 774 F.2d 43, 47 (2d Cir. 1985)). Judge Cote continued, noting that the defendant had failed to provide any justification whatever for its reason to avoid paying the arbitral award rendered against it, and on this basis alone granted the request for attorneys fees. <u>Celsus</u> is nearly on all fours with the instant matter: both cases were maritime in nature stemming from a charter party dispute; both cases were subject to English law and London arbitration; both cases saw the participation by the defendant in the arbitration; both cases resulted in a decision in London favoring the Rule B plaintiff in this Court; and in both cases, the defendant refused to pay without any justification. The only significant difference[7] is that in the instant case, Defendant HRC-Bangladesh has engaged in an extraordinary pattern of harassing behavior in order to prevent SEA CON

---

[7] We note that in <u>Celsus</u>, the defendant failed to appeal while in this matter, the defendant's appeal failed. The result, however, is the same and so SEA CON submits that this is a distinction without a difference.

from collecting, while such actions are not noted in Celsus. Plainly, if an award of attorneys fees was apropriate in the Celsus matter, they are even better justified here. *See also* First Nat'l Supermarkets, Inc. v. Retail, Wholesale and Chain Store Food Employees Union, Local 228, 118 F.3d 892, 898 (2d Cir. 1997) (holding that in the context of a petition to confirm an arbitration award, attorneys fees are warranted where "the party challenging the award has 'refused to abide by an arbitrator's decision without justification'"); In the Matter of the Arbitration Between Bulkcarriers, Ltd. and Societe Al Alam Int'l, 1983 A.M.C. 1501, 1502 (S.D.N.Y. 1983) ("[i]t has been held that a court may assess attorney's fees for willful and unjustified refusal to abide by an arbitrator's award") (*citing* Nat'l Ass'n of Letter Carriers v. U.S. Postal Serv,, 590 F.2d 1171 (D.C. Cir. 1978); United Steelworkers of Am. v. Interpace Corp., 447 F. Supp. 387 (W.D. PA. 1978); *see also* International Union of District 50, United Mine Workers of Am. v. Bowman Transp. Inc., 421 F.2d 934, 935 (5th Cir. 1970) (the court in the exercise of equity may grant a petitioner's request for costs and attorneys fees).

It cannot be disputed that HRC-Bangladesh agreed to arbitrate this matter in London, but notwithstanding that agreement it initially and unjustifiably refused or otherwise failed to participate in the arbitration. Even after appearing and participating in the arbitration, HRC-Shipping refused to satisfy the arbitral award against it, causing SEA CON to engage in collection efforts in the United States, France and Singapore. It is well-established under the foregoing case law that where a party agrees to arbitrate, arbitrates, and refuses to pay on the arbitral award against it, that party is in *per se* bad faith and the award of attorneys fees as a sanction is appropriate. *See also* International

Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, 707 F.2d

425, 428 (9th Cir. 1983), holding:

> We...conclude that an unjustified refusal to abide by an
> arbitrator's award may equate an act taken in bad faith,
> vexatiously or for oppressive reasons....Moreover, bad
> faith may be demonstrated by showing that a defendant's
> obstinacy in granting a plaintiff his clear legal rights
> necessitated resort to legal action with all the expense and
> delay entailed in litigation.

In International Union, the Ninth Circuit upheld the District Court's order directing the

defendant to pay plaintiff's attorneys fees when the defendant refused to abide by the

arbitration award. The Court found defendant was not justified in ignoring the award

simply because it believed that the arbitration award was invalid.

The holding in SSA Terminals v. Machinists Automotive Trades District Lodge

No. 190, 244 F.Supp.2d 1031 (N.D.CA. 2003) is similar. In SSA Terminals, the Court

found the Defendant's refusal to abide by the arbitration award and its motion to vacate

the award were both unjustified where the challenge was "nothing more than a

disagreement with the arbitrator's findings on the merits of the case." The Court

emphasized the deference courts owe to arbitral decisions and found that a challenge to

an arbitral decision based only on the merits of the case is *per se* frivolous because it is

destined to fail. The Court also found that the arbitrator's lengthy award more than

adequately addressed all the arguments that had been raised in the motion to vacate and a

careful reading of the award should have convinced the losing party of the futility in

moving the court to vacate.

HRC-Bangladesh had no justification for refusing to abide by the arbitration

award. Following issuance of the award, HRC-Bangladesh then entered into a vexatious

and harassing pattern of frivolous applications in four separate jurisdictions simply to delay, drive up costs, and attempt to avoid its obligation to pay. As set forth above, HRC-Bangladesh vexatiously, wantonly engaged in an oppressive pattern of bad faith litigation for the sole purpose of attempting to exhaust SEA CON and cause SEA CON to cease pursuing it for collection on the amounts due and owing as found by the arbitrators and the English High Court. There was no basis in law or fact for HRC-Bangladesh to resist payment on the awards and its actions cannot in any way have been based in good faith.

Plaintiff SEA CON respectfully requests that judgment be rendered against Defendant HRC-Bangladesh for SEA CON's attorneys fees and disbursements, as supported in the accompanying Unger Affirmation and Davidson Declaration, in the amount of $278,702.74, or in such other amount as may be determined at an inquest, which have been incurred in bringing enforcement actions against HRC-Bangladesh.

## CONCLUSION

For all the foregoing reasons, SEA CON should be awarded its reasonable attorneys fees and disbursements incurred in collecting on the arbitral awards it obtained against HRC-Bangladesh, in the amount of $278,702.74 or in such other amount as may be determined at an inquest.

Dated: New York, New York
       April 4, 2008

Respectfully submitted,

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
Sea Consortium Pte. Ltd.

By: _____
    Michael E. Unger (MU 0045)
    Lawrence J. Kahn (LK 5215)
    80 Pine Street
    New York, NY 10005
    (212) 425-1900 / (212) 425-1901 (fax)